UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORIKO PUMMELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No: 05 C 5896 |
| ) | Judge John W. Darrah |
| UAL CORPORATION, d/b/a ) | |
| UNITED AIRLINES; THOMAS PARRINE; ) | |
| and ANTHONY WIETRZYCHOWSKI, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Noriko Pummell, brought a Complaint against Defendants, UAL Corporation ("United"), Thomas Parrine, and Anthony Wietrzychowski, asserting that she was discriminated against on the basis of her race (Asian) and national origin (Japanese) in violation of 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* because United singled her out for investigation and terminated her employment. Currently before the Court is the Defendants' Motion for Summary Judgment. For the following reasons, the Defendants' motion is granted.

1

## FACTS[1]

Plaintiff was employed by United as a flight attendant. (Def. 56.1(a) Statement at ¶ 5). As of July 2003, the Plaintiff had worked for United for twelve years, most of the time as a flight attendant based at O'Hare Airport. (Pl.'s 56.1(b)(3)(B) at ¶ 32). Plaintiff is of Japanese origin; she is a citizen of Japan, who is a permanent resident of the United States, currently domiciled in the State of Florida. (Def. 56.1(a) Statement at ¶ 6).

United offers duty-free goods, which are the property of the Inflight Sales Group, Inc. ("ISG"), for sale to passengers on its flights between Chicago O'Hare Airport and Narita Airport in Tokyo, Japan. (Def's 56.1(a) Statement at ¶ 14). ISG entrusts United and its employees to control and sell the goods on its behalf (Def's 56.1(a) Statement at ¶ 14). The goods are kept on carts. (Def's 56.1(a) Statement at ¶ 17). Each cart has a hand-held computer, which is generally kept either on the top of the cart or inside of it; and the carts are inventoried by ISG before they are boarded on the flight. (Def's 56.1(a) Statement at ¶ 17). Flight attendants are given the responsibility of selling the goods to passengers during the flight, and they earn a commission on the items they sell. (Def's 56.1(a) Statement at ¶ 15). Upon the completion of a sale, the flight

---

[1] Defendants moved to strike portions of Pummell's 56.1(b)(3)(B) statements of additional facts and Pummell's response to Defendants' 56.1(a) statement of material facts. Specifically, Defendants assert that Pummell failed to comply with the applicable Local Rule by submitting Rule 56.1(b)(3)(B) statements that are unsupported by the facts and/or lack proper foundation. Further, the Defendants assert that Pummell improperly disputes portions of Defendants' 56.1(a) statement. To the extent Plaintiff's statements and responses violate Local Rule 56.1, they have not been considered. A review of the record reveals that several facts disputed by Pummell are, in fact, supported by the record; and no evidence to the contrary has been presented. To the extent that Pummell improperly disputed facts, they have been considered as undisputed. Further, Defendants, in their motion, admit that they improperly denied disputed facts and improperly denied some of Pummell's 56.1(b)(3)(B) statements. To the extent that the Defendants improperly disputed facts, they have been considered as undisputed.

attendant collects the money or the credit card information and enters each sale into the computer manually; and the computer generates a receipt for the sale. (Def's 56.1(a) Statement at ¶ 18). At the end of the flight, the flight attendant uses the cart's computer to create a report that reflects the items that have been sold in-flight, locks the cart, and turns the key, the report, the cash envelope, and the credit card slips over to the chief purser. (Def's 56.1(a) Statement at ¶ 19). Flight attendants can sell goods to themselves, without having to report or clear the sale through anyone. (Def's 56.1(a) Statement at ¶ 20). Pummell regularly worked on a duty-free cart on the Chicago-Narita route during 2003. (Def's 56.1(a) Statement at ¶ 16).

In May 2003, ISG official Celeste Moran contacted Defendant Anthony Wietrzychowski, who was employed as a Staff Representative with United in its Corporate Security Department, to inform him that they had experienced a number of shortages or "discrepancies" in the inventory of duty-free carts, aboard flights between Chicago and Narita between March and May of 2003. (Def's 56.1(a) Statement at ¶¶ 4, 21). ISG discovered the recurring discrepancies during its routine inventories of the duty-free carts which are conducted following the arrival of all flights; and the discrepancies raised ISG's suspicion that duty-free items were being stolen from the carts by one of United's flight attendants who worked on the carts. (Def's 56.1(a) Statement at ¶ 22). ISG's internal investigation revealed that Pummell worked on the duty-free cart on every flight on which discrepancies were found on the Chicago-Narita route between March and May of 2003.[2] (Defs' 56.1(a) Statement at ¶ 23).

---

[2] Pummell disputes Defendants' 56.1(a) Statement ¶ 23, asserting that it not supported by the record. A review of the record, particularly Wietrzychowski's deposition transcript at page 19, reveals that this fact is supported by the record. Pummell submits no evidence to the contrary.

3

ISG also informed Wietrzychowski that another flight attendant identified by her identification numbers 26027, and later identified as "B. Fisher," was "usually on the same flight" with Pummell where losses occurred. (Pl.'s 56.1(b)(3)(B) at ¶ 1). After being informed of the discrepancies by ISG, Wietrzychowski began investigating whether Pummell may have possibly been stealing items from the duty-free carts. (Defs' 56.1(a) Statement at ¶ 24). Wietrzychowski testified that he did not investigate "B. Fisher." (Pl.'s 56.1(b)(3)(B) at ¶¶ 1, 2). "B. Fischer" was not on any flights after June 9, 2003, when discrepancies did occur. (Defs' 56.1(a) Statement, Murdoch Decl., Ex. 3-4).

On July 7, 2003, Pummell, was assigned to work the United Flight #883 from Chicago (ORD) to Tokyo Narita (NRT). She worked one of the duty-free carts on the flight and was not the only flight attendant working duty-free sales on the flight. (Pl's 56.1(b)(3)(B) Statement at ¶ 13). There were three duty-free carts on the flight, and four flight attendants were assigned to work duty-free sales. (Pl's 56.1(b)(3)(B) Statement at ¶ 13).

After flight #883 landed in Narita, ISG performed a routine inventory of the duty-free carts. (Defs' 56.1(a) Statement at ¶ 35).[3] In total, twelve items were determined to be missing from the duty-free carts on the flights between Chicago O'Hare and Tokyo Narita on July 7 and 9, 2003. (Pl.'s 56.1(b)(3)(B) Statement at ¶ 10). The missing items included a bottle of Hennessy and a bottle of Glamorous perfume. (Defs' 56.1(a) Statement at ¶ 35). ISG official Celeste Moran contacted Wietrzychowski to inform him of the discrepancies; and based on Moran's earlier reports that suggested Pummell may have been associated with the earlier

---

[3] Pummell disputes Defendants' 56.1(a) Statement ¶ 35, asserting that it is not supported by the record. A review of the record supports the Defendants' 56.1(a) Statement as summarized. Pummell submits no evidence to the contrary.

4

discrepancies, Wietrzychowski decided to arrange a search of her belongings for the missing items, upon her return to Chicago on Flight #882. (Defs' 56.1(a) Statement at ¶ 36). Wietrzychowski admitted that Defendants did not investigate what happened to any of the other ten missing items from the flight other than the Hennessy and a bottle of Glamorous. (Pl's 56.1(b)(3)(B) Statement at ¶ 10).

Wietrzychowski contacted Thomas Parrine, an Onboard Supervisor with United, and inquired about Pummell's scheduled return date from Japan on July 9, 2003, and arranged with the United States Customs Office at O'Hare to search Pummell's bags for the missing items. (Defs' 56.1(a) Statement at ¶ 37).

On July 9, 2003, Pummell returned to Chicago on Flight #882 and did not purchase any duty-free items on that flight. (Defs' 56.1(a) Statement at ¶ 34). There is no evidence that B. Fisher was on this flight. (Defs' 56.1(a) Statement, Murdoch Decl., Ex. C).

Upon arrival in Chicago, and before going through Customs, Pummell filled out a Customs form, as required. and, as for the items/goods on her form, declared "Dry foods & Misc." with a value of "$10" and "liquors, cigarettes" with a value of "$40." (Defs' 56.1(a) Statement at ¶ 38). While in Customs, officials approached Pummell and requested to search her bags and, upon searching them, discovered a bottle of Hennessy and a bottle of Glamorous perfume. (Defs' 56.1(a) Statement at ¶ 41).

During the Customs interview, which was attended by Wietrzychowski and Parrine, Parrine took notes. Parrine's notes regarding Wietrzychowski's meeting with Plaintiff on July 9, 2003, contain the following notations, in which "TW" refers to Wietrzychowski:

"TW" – "all evidence points to you";

5

> "TW" – "can guarantee only restitution if admits"; "Don't know what penalty – probably federal charges"; "if involved DF ["Duty Free"] will prosecute, if accepted will accept restitution";
>
> "TW" – "advise not to lc,"; and "someone will have to pay back to avoid prosecution."

(Pl's 56.1(b)(3)(B) Statement at ¶ 6). In his deposition, Wietrzychowski denied that he made these statements to Pummell. (Pl's 56.1(b)(3)(B) Statement at ¶ 7). At this interview, Pummell told Wietrzychowski and Parrine that she was not even on some of the flights on which there were alleged duty-free losses. (Pl's 56.1(b)(3)(B) Statement at ¶ 8).

Parrine began investigating Pummell's account of how she came into possession of the items to determine if she had violated United company policy, specifically the Articles of Conduct. (Defs' 56.1(a) Statement at ¶¶ 4, 47). Article 4 provides that absent mitigating factors, a flight attendant will be discharged for "any unauthorized or attempted possession or removal of any company property including records or confidential or private information or property of employees, customers, or others with whom the company does business." (Defs' 56.1(a) Statement at ¶ 11).

Pummell was placed on a paid leave of absence, which is the standard procedure for investigations of a violation of the Articles of Conduct that might result in termination; and she returned to her home in Kissimmee, Florida, during the period of leave. (Defs' 56.1(a) Statement at ¶ 48).

Pummell asserts that on the July 7 Flight #883, she purchased Godiva chocolates from her duty-free cart, paying with cash. (Pl's 56.1(b)(3)(B) Statement at ¶¶ 106-107). (Defs'

6

56.1(a) Statement at ¶ 26). Pummell asserts that she conducted the purchase herself by entering the purchase into the hand-held computer for that cart and issuing herself a receipt for the sale. (Defs' 56.1(a) Statement at ¶ 27). Later on in the flight just before she went on a two-hour break, Pummell claims that she decided to also purchase a bottle of Hennessy cognac. (Defs' 56.1(a) Statement at ¶ 28). The cost of the bottle was $90; Pummell claims she put a $100 bill into the cash envelope and took a $10 bill as change. (Defs' 56.1(a) Statement at ¶ 29). With her second purchase, the purchase of Hennessy, Pummell did not enter the purchase into the computer; and she did not issue herself a receipt and claims, instead, that she told another flight attendant who was working duty-free about her Hennessy purchase and asked that flight attendant to enter her purchase into the computer and issue her a receipt. (Defs' 56.1(a) Statement at ¶ 30). Pummell never received a receipt from nor confirmed with this flight attendant (whose name she was not able to recall) that this other attendant had entered the Hennessy purchase into the computer. (Defs' 56.1(a) Statement at ¶ 32). Pummell stayed with her parents during her layover in Japan. (Defs' 56.1(a) Statement at ¶ 33). According to Pummell, as she was leaving her parents' home on the morning of her return flight, her mother handed her a gift, which she said included the Glamorous perfume, placed inside a paper bag; but Pummell did not open the bag to look what was inside and just placed it inside her travel bag. (Defs' 56.1(a) Statement at ¶ 33).

During United's investigation, Parrine met with Pummell in person twice at United's offices in Chicago; and at each meeting, Pummell gave a written statement of her explanations as to how she acquired the Hennessy and Glamorous. (Defs' 56.1(a) Statement at ¶ 49). Pummell testified at her deposition that during her interviews with Parrine, she provided a

description of the flight attendant she supposedly told about her purchase of the Hennessy; according to Pummell, the flight attendant was female, Asian, and did not work on the return flight to Chicago on July 9, 2003. (Defs' 56.1(a) Statement at ¶ 50). Parrine arranged for and conducted interviews with some of the other flight attendants on the July 7, 2003 Flight #883 to determine if any of the attendants could corroborate Pummell's account of her purchase from the duty-free cart. (Defs' 56.1(a) Statement at ¶ 51). None of the other flight attendants interviewed could confirm that Pummell had told them that she had made a cash purchase of the Hennessy. (Defs' 56.1(a) Statement at ¶ 52). United has a record of a statement from every flight attendant on that Flight, except from Patricia Gendron, who is Caucasian. (Defs' 56.1(a) Statement at ¶ 52).

On July 22, 2003, Plaintiff's supervisor, Robin Murdoch, summoned Pummell to a meeting at O'Hare. (Pl's 56.1(b)(3)(B) Statement at ¶ 17). When Pummell arrived in Chicago, she was detained and arrested by two Chicago police officers. (Pl's 56.1(b)(3)(B) Statement at ¶ 17). ISG made the decision to file criminal charges against Pummell. ISG employee Margaret Woo is listed on the criminal complaint as the "Victim – Complainant." (Parrine Dec. ¶ 9; Parrine Dec. Ex. 5).

At the conclusion of the United investigation, Parrine issued Pummell a Letter of Charge for violation of Article of Conduct No. 4 based on the fact that she had been found in possession of the bottle of Hennessy and that she had been unable to provide a credible explanation about her alleged purchase. (Defs' 56.1(a) Statement at ¶ 52).

Pummell's initial Letter of Charge, dated August 31, 2003, advised Pummell that a hearing regarding the charge would be scheduled to occur at O'Hare at a date and time to be

8

determined. (Defs' 56.1(a) Statement at ¶ 56). Parrine contacted Pummell and her union representative via telephone to schedule the hearing; and it was eventually scheduled for September 19, 2003. (Defs' 56.1(a) Statement at ¶ 52). Pummell did not attend the September 19 hearing and sent a letter on September 25, 2003, apologizing for missing the hearing because she was in Japan; United did not discipline Pummell for missing the hearing. (Defs' 56.1(a) Statement at ¶ 58). United rescheduled the hearing for September 29, 2003, and issued Pummell an Amended Letter of Charge, informing her of the rescheduled hearing and advising that her "failure to appear at the hearing would result in her voluntary discharge from United." (Defs' 56.1(a) Statement at ¶ 59). Pummell missed the September 29 hearing as well, phoning Murdoch on that day to inform her that she had missed the appointment because she was in the emergency room. (Defs' 56.1(a) Statement at ¶ 60). Pummell faxed medical documentation to United that evening, which confirmed that she was undergoing medical testing on September 29-30, 2003; and United did not discipline Pummell for missing this scheduled hearing. (Defs' 56.1(a) Statement at ¶ 61).

On October 7, 2003, Pummell was tried for misdemeanor theft in state court. (Pl's 56.1(b)(3)(B) Statement at ¶ 23). The judge made a directed finding of not guilty. (Pl's 56.1(b)(3)(B) Statement at ¶ 23). Wietrzychowski testified at the trial on behalf of the prosecution. (Pl's 56.1(b)(3)(B) Statement at ¶ 23). After the judge's finding that Pummell was not guilty, Wietrzychowski told one of Pummell's attorneys, "We're going to fire her anyway." (Pl's 56.1(b)(3)(B) Statement at ¶ 24).

9

United issued another Amended Letter of Charge, rescheduling the hearing for October 20, 2003; and the letter contained the same "voluntary resignation" language as the previous letter. (Defs' 56.1(a) Statement at ¶ 62). Pummell again failed to appear at the October 20, 2003 hearing because she was in Japan receiving medical treatment. (Defs' 56.1(a) Statement at ¶ 63). When she notified United that she would not be able to appear at the meeting is in dispute. (Pl's Response to Defs' 56.1(a) Statement at ¶ 63).

On October 24, 2003, United issued Pummell a directive, informing her that the medical documentation she submitted in connection with her absence from the October 20 meeting was insufficient and ordering her to supplement that documentation by October 31, 2003, or she would face discipline. (Defs' 56.1(a) Statement at ¶ 65). Pummell did not contact United about the directive until November 4, 2003; and all of the requested medical documentation was not submitted until December 4, 2003. (Defs' 56.1(a) Statement at ¶ 66). Again, Pummell was not disciplined for missing the October 20 hearing. (Defs' 56.1(a) Statement at ¶ 67). United issued another Amended Letter of Charge to Pummell on November 19, 2003, rescheduling the hearing for December 3, 2003; and then United rescheduled it again for December 11, 2003, following another call from Pummell to Murdoch prior to the hearing. (Defs' 56.1(a) Statement at ¶ 68). On December 10, 2003, Pummell faxed a doctor's note to Murdoch with her own cover note; the cover note claimed that her doctor had restricted her from traveling for three weeks and informed Murdoch that, because of these restrictions, she would be unable to attend the December 11 hearing. (Defs' 56.1(a) Statement at ¶ 69). After Murdoch forwarded the medical information to United's Medical Department, the Department informed Murdoch that Pummell's medical documentation was insufficient to substantiate her purported travel restrictions; and Murdoch

tried contacting Pummell regarding her need to further substantiate her absence. (Defs' 56.1(a) Statement at ¶ 70). Murdoch was unable to reach Pummell and left her a message. Later that day, Pummell tried reaching Murdoch via telephone but reached another supervisor, who advised Pummell to attend the December 11 hearing. (Defs' 56.1(a) Statement at ¶ 71). Pummell did not attend the December 11 hearing; and she was issued a Letter of Decision on December 23, 2003, advising her that because she missed the December 11 hearing, she was considered to have voluntarily resigned and that her employment was terminated effective December 11, 2003. (Defs' 56.1(a) Statement at ¶ 72).

Other flight attendants domiciled at O'Hare have been terminated after they were deemed to have voluntarily resigned their employment because of their failure to appear at scheduled hearings on a Letter of Charge. (Defs' 56.1(a) Statement at ¶ 78). In 2004 and 2005, twenty-one United flight attendants who worked out of O'Hare Airport had their employment terminated for this reason. (Defs' 56.1(a) Statement at ¶ 78). Of these twenty-one individuals, two were Asian; and nineteen were not. (Defs' 56.1(a) Statement at ¶ 79). None of those individuals had passports issued from Japan. (Defs' 56.1(a) Statement at ¶ 79).

Pummell was undergoing medical tests, including upper GI and lower GI, because she experienced pain, threw up and couldn't eat. (Pl's 56.1(b)(3)(B) Statement at ¶ 22). Pummell saw several doctors, including two gastroenterologists, because of these symptoms. (Pl's 56.1(b)(3)(B) Statement at ¶ 22). Eventually, she had her gallbladder removed in February 2004. (Pl's 56.1(b)(3)(B) Statement at ¶ 22).

## LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) when no genuine issue of material fact exists or when, drawing all factual inferences in favor of the nonmoving party, no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992).

One of the "principal purposes" of awarding summary judgment is to "isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court that there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson*, 477 U.S. at 254-56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

## ANALYSIS

Pummell claims the Defendants discriminated against her based upon her race and national origin in violation of Title VII and Section 1981. A plaintiff may prosecute Title VII and Section 1981 claims either through the direct method – showing intentional discrimination –

12

or indirectly through a burden-shifting method established by the Supreme Court in *McDonnell v. Douglas*, 411 U.S. 792, 800-06 (1973). *See e.g., Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004) (*Buie*); *Cerutti v. BASF Corp.*, 349 F. 3d 1055, 1061 (7th Cir. 2003) (national origin); *Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002) ("The same standards governing liability under Title VII apply to § 1981 claims."). Pummell has not presented direct evidence and must proceed on the indirect method. *Buie*, 366 F.3d at 503.

In *McDonnell Douglas*, the Supreme Court established a three-part framework governing the order and allocation of proof in cases alleging discrimination. First, Pummell must establish a *prima facie* case of job discrimination. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). To establish a *prima facie* case, a plaintiff must demonstrate that she was: (1) in the protected class, (2) was performing her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated individuals outside of her protected class. *McDonnell Douglas*, 411 U.S. at 802. If Pummell is able to establish a *prima facie* case, the burden would shift to the Defendants to present a legitimate, non-discriminatory reason for its decision. If the Defendants present a legitimate, non-discriminatory reason for their job decision, Pummell must establish that Defendants' reason was a pretext for discrimination, "an explanation designed to obscure the unlawful discriminatory employment action." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir. 2002) (*Millbrook*).

13

Defendants do not contest that Pummell is a member of the protected class and that she suffered adverse employment actions caused by the Defendants (her arrest and termination)[4] but assert that Pummell cannot meet the remaining elements of her *prima facie* case.[5]

*Termination*

Pummell cannot state a *prima facie* case with respect to her termination because she cannot establish other similarly situated employees outside of her protected class were treated more favorably.

The similarly-situated requirement "'normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their

---

[4] In her Response to Defendants' Motion for Summary Judgment, Pummell does not assert that the Defendants' actions related to her arrest were an adverse employment action, as she alleged in her Complaint. "It is unclear whether a party can waive a claim presented in its complaint by failing to argue the matter in response to a motion for summary judgment, *compare Nabozny v. Podlesny*, 92 F.3d 446, 457 n. 9 (7th Cir.1996) (non-moving party's failure to raise an issue in response to summary judgment motion does not result in waiver), *with Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 810 (7th Cir.2001) (non-moving party's failure to raise issue in response results in waiver)." *Childs v. Earle M. Jorgensen Co.*, 2001 WL 1607565, *2 (N.D. Ill. 2001). Therefore, the Court will consider both claims. Although the Defendants assert that the investigation itself may not rise to the level of an adverse employment action, citing *Whittaker v. Northern Illinois University*, 424 F.3d 640, 647-48 (7th Cir. 2005), in the context of this case, these actions are adverse.

[5] The Defendants also assert that Pummell was not meeting legitimate job expectations. Specifically, Defendants assert that Pummell was not meeting legitimate expectations because on five separate occasions over a period of four months, she failed to attend a hearing where she would have been allowed to present her defense to the charge, with the assistance of Union representation, each time giving late or last-minute notice and, at times, with insufficient medical documentation. Pummell asserts she was meeting legitimate expectations because United requires only that employees attend meetings or that they provide notice and documentation if they failed to attend. Pummell asserts she did both and that the sole issue is whether the medical documentation was sufficient.

14

conduct or the employer's treatment of them'". *Humphries v. CBOCS West, Inc.*, — F.3d —, 2007 WL 60876, *14 (7th Cir. 2007) (*Humphries*), citing *Radue v. Kimberly-Clark Corp.* 219 F.3d 612, 617-18 (7th Cir.2000) (*Radue*). "An employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Radue*, 219 F.3d at 618. The Seventh Circuit recently clarified that while there is no "magic formula" for determining if one was similarly situated, "the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be cooperator to allow the type of comparison that, taken together with the other *prima facie* evidence, would allow a jury to reach an inference of discrimination . . . ." *Humphries*, 2007 WL 60876 at *14.

Even under this more flexible approach, Pummell cannot establish a *prima facie* case because she cannot show similarly situated comparators who were treated more favorably with respect to termination.

In 2004 and 2005, twenty-one United flight attendants who worked out of O'Hare Airport were terminated from employment after they were deemed to have voluntarily resigned their employment as a result of their failure to appear at a hearing following the issuance of a Letter of Charge. Of these twenty-one individuals, only two were Asian. None had passports issued from Japan (and, therefore, likely were not of Japanese national origin). Thus, because Pummell presented no evidence that employees outside her protected categories were not terminated under similar circumstances, she cannot establish her *prima facie* case. *Halloway*, 180 F.3d at 827.

15

*Investigation and Arrest*

Pummell asserts that she was singled out for the investigation and arrest based on her race and national origin. Specifically, she asserts that she was singled out for a racially discriminatory investigation when United failed to investigate other, non-Asian, non-Japanese, employees who may have removed items from the duty-free carts. "When a plaintiff produces evidence sufficient to raise an inference that the employer applied its legitimate expectations in a disparate manner, the second and fourth prongs of *McDonnell Douglas* merge, allowing the plaintiff to establish a *prima facie* case by establishing that similarly situated employees were treated more favorably." *Grayson v. O'Neill,* 308 F.3d 808, 818 (7th Cir. 2002).

Pummell asserts that flight attendant "B. Fischer," who is Caucasian and who was identified by ISG as being potentially involved in the theft of duty-free goods, was treated more favorably because Fisher was not investigated, issued an Article 4 violation, or arrested. Celeste Moran of ISG sent an email to Wietrzychowski on June 9, 2003, asking that United examine whether Pummell might be connected to the ongoing disappearance of duty-free inventory on the Chicago-Narita route and asking also that United examine whether another flight attendant, "B. Fischer," because, according to Moran, B. Fisher and Pummell frequently flew together. Defendants respond that "B. Fischer" was not investigated because she was not on any flights after June 9, 2003, when Pummell was onboard and when discrepancies continued to occur. Also, B. Fisher was not onboard the July 7, 2003 (Flight #882) and July 9, 2003 (Flight #883) flights between Chicago and Narita, during which the discrepancies at issue here occurred. Pummell replies that Defendants' argument is unavailing because they concede that Pummell was also not flying on all of the flights when irregularities occurred in the duty-free cart. However,

16

contrary to Pummell's conduct, there is no evidence that any missing duty-free items were found in B. Fisher's possession; and, thus, there is no reason that she, like Pummell, should have been arrested but was not. Pummell provides no evidence that other United employees were found with missing items from the duty-free cart but were not arrested. Furthermore, two Letters of Charge for Article 4 violations have been issued by Parrine; and neither of those recipients – both of whom ultimately were terminated for their violations after a hearing – is either Asian or Japanese. Because Pummell has presented no evidence that Article 4 has been applied or enforced inconsistently or more favorably with regard to non-Asian or non-Japanese flight attendants, she cannot establish this prong of her *prima facie* case. *Bio v. Federal Express Corp.*, 424 F.3d 593, 598 (7th Cir. 2005) (proof that supervisor treated employees outside of protected class same as plaintiff defeats discrimination claim).

Because Pummell cannot identify any employees who engaged in similar conduct as she did, yet received more favorable treatment, her claim fails; and summary dismissal is warranted. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330-31 (7th Cir. 2002) (lack of evidence of more favorably treated cooperator was fatal to claim). Further, as discussed more fully below, Plaintiff has not presented sufficient evidence that United was involved in Pummell's arrest.

### *Section 1981 Claim Against Wietrzychowski*

Pummell has also failed to raise a genuine issue of material fact regarding her claim that Wietrzychowski is personally liable under Section 1981. *Behnia v. Shapiro*, 961 F. Supp. 1234, 1237 (N.D. Ill. 1997) (*Behnia*) (individual liability may be found under Section 1981 only where the individual defendant "participated in the alleged discrimination against the plaintiff."); *Daulo v. Commonwealth Edison*, 892 F. Supp. 1088, 1091 (N.D. Ill. 1995) ("Section 1981 liability

17

against an individual demands personal involvement in discrimination."). Pummell cites Wietrzychowski's assistance of the police in arresting Pummell, prosecuting Pummell, and his remark to Pummell's defense attorney that United was "going to fire [Pummell] anyway" as evidence Wietrzychowski participated in discrimination against Pummell. However, Pummell has not presented sufficient evidence to withstand a motion for summary judgment on this claim.

Neither Wietrzychowski nor United was involved in the decision to bring criminal charges against Pummell for theft of the duty-free items. That was the decision of ISG, as the missing duty-free items were ISG's property, not United's; and ISG employee Margaret Woo is named on the criminal complaint as the "Victim – Complainant." Moreover, Pummell has presented no evidence that Wietrzychowski or anyone from United participated in the decision to prosecute Pummell or in the prosecution itself, other than Weitrzychowski's testimony at trial, which in no way was shown to be untrue or otherwise improper. Also, Pummell presents no evidence that Wietrzychowski was involved in Pummell's termination for failing to attend the scheduled hearings. Wietrzychowski had no supervisory authority over Pummell, and there is no evidence that he participated in the decisions adverse to Pummell.

Thus, because the record shows that Wietrzychowski was not "personally involved" nor participated in the alleged discrimination against Pummell, summary judgment is granted in Wietrzychowski's favor on the claim against him in his individual capacity. *See Behnia*, 961 F. Supp. at 1237; *Daulo*, 892 F. Supp. at 1091.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

Date: March 30, 2007

JOHN W. DARRAH
United States District Court Judge